of the day is William T. Quinn, David Ross versus Secretary of State for the State of Georgia 25-11843. Mr. Greenspan, you may proceed and I do see you've reserved some time for rebuttal. Yes. Thank you, Your Honor. And good morning, Your Honors. May it please the Court. Let's run the Spokane-Lujan analysis on all three prongs of injury in fact, keeping in mind the two things that triggered plaintiffs' undermined confidence in the electoral process. And these were, number one, anomalies surrounding voter list maintenance. And number two, the Secretary hindering political process participation by plaintiffs who tried to fix those anomalies by sending the Secretary notice and asking he cure them. And let me just ask you a sort of a basic question. When you say the Secretary of State is hindering, you simply mean ignoring the letter that your client sent. That's the factual basis for that point. Yes, Your Honor. The Secretary claims, in fact, absolute discretion, Judge, to disregard that notice and that notice was sent under Section 20510 of the NVRA, the National Voter Registration Act. So the Secretary claims absolute discretion to refuse to start the cure. So first, concreteness under Spokane-Lujan. Transunion-style historical analogs are many, and they include constitutional violations, such as the Secretary denying through his conduct a First Amendment right to petition and emotional distress injuries. This Court's Jacobson and Wood decisions confirmed that hindering a right to participate in the political process triggers standing. Surely the rule is not that anyone who claims emotional distress about any government action they disagree with has standing. I think that would revolutionize our standing doctrine. I would answer yes, Your Honor, but let's preserve category purity here. Let's not get into category confusion. That's not a concreteness concern. That's a particularity concern, which I will certainly get to if Your Honor would like me to elaborate. You can continue. Sure. So the Jacobson and Wood decisions confirmed that hindering a right to participate triggers standing, and this Court's Walters decision confirms that the Secretary causing emotional distress likewise qualifies as Article III concrete injury. It's explicit expressed in the Walters decision in a TLRA case. We also have to recognize that Spokio held that Congress's creation of a private right of action is, quote, important and, quote, instructive since Congress is well positioned to identify and elevate intangible injuries into concrete ones under Article III. And here, this is an unusual appeal where the Secretary's own Moosie case, that's the case they cite for their purposes, agrees with this point. If we remember, we keep laser focused on the proper argument under the proper category. So the Moosie case agrees that there could indeed be concreteness in the context of NVRA's private right of action, and in that way, the Secretary's own case joins our cases of Griswold, Green, and King, which find NVRA violations to be concrete injuries. So now, Judge Grant, the second Article III prong, particularity. And this goes to, Your Honor picked up on the Secretary's trope, which is that perhaps these are mere psychic injuries experienced by plaintiffs, creating a generalized grievance that would be held by every member of the electorate. But this runs headlong into the reality. You do concede that general interests common to all members of the public do not constitute particularized injuries. That is correct. So you're going to tell us how your clients are different. Yes, and part of my argument is case law argument, and part is the facts of this case. So the case law answer to Your Honor's question is that it's the reality expressed in Griswold. The undermined confidence belongs to plaintiffs in particular because of their unique engagement with the NVRA. If that were true, then it would depend, I don't think you can say because I have an emotional injury over this and someone else doesn't, that's particular to me. That's not how the case law has operated. I mean, we have cases with people saying that they're emotionally harmed by, say, the removal of a Confederate monument. And we have not said, well, since not everyone is upset by that, that means that you have a particularized injury. That's not how that has worked. Why would we look at it any differently here? Right, and I would agree the CINOTAF removal cases demonstrate that there are situations where a subgroup's emotional distress, if you will, won't give them standing, won't give them particularity. But what we have that's different here is Congress has elevated this statutory right of action so they've created a new category of a participant in the political process that never existed before. The limiting principle in this case is in the statute. Here's the problem. I think you would have to agree that some people agree with your clients about what should happen here, right? And others agree with your clients, others disagree with their clients and have a different view about what should happen here, right? Okay. With respect, I think it's not that simple. What we wish to happen here is that the Secretary commit to the safe harbor outlined in federal law. Right, but there's disagreement, I think it's fair to say, over what that safe harbor requires. Yes? Your Honor, I really don't think there's disagreement about what that requires. The disagreement may be whether the process engaged in by the Secretary is reasonable compliance under the NBRA. Okay, so that's fine. People will disagree about whether there has been reasonable compliance under the law, right? I'll take that. You have to concede that. You're going to lose credibility if you don't concede that there are disagreements about facts in the world, right? Of course, Your Honor. Let's not even make it about this case. I'll take you so you don't think you're making any concessions about this case. But even in the voting arena, let's say right now many people are saying we want a return to paper ballots. And in a suit they could say, trying to establish their injury, my confidence in the security of the election is diminished by the fact that they're not paper ballots. Someone else could say if paper ballots were implemented, I was around in 2000 and I have no confidence in paper ballots. I remember all the stress and trouble and litigation that caused having paper ballots diminishes my perspective on the safety and security of our elections. That I think shows that neither one of those people has a particularized injury. It's just that they disagree about what the rules should be, right? How is this any different than that? I agree, Your Honor, with the part of the conclusion that you just reached. And what you just set up, Your Honor, is the wood holding would be Raffensperger. There's a person who had no connection, no prior connection with the political process, had no statutory engagement. No, no, no. These people have, these people are very, they're very connected. They're very into it. It's very important to them. In the same way that these issues are very psychologically important to your clients. My distinguishing fact isn't just the level of passion. My distinguishing fact is that they become, they opt in to become participants in the political process through the notice where Congress has expected, has given them the expectation that if there's a good faith bona fide notice with a named violation that Congress says you can expect the Secretary to cure it. But aren't you talking about a bare procedural statutory violation divorced from concrete harm? And that's not going to give your client standing. Well, Spokio and even TransUnion note that if there's an historical analog, you may characterize something as somewhat procedural, but if there's an historical analog to an injury in the past that we've accepted at common law, for example, then that can be. My question was based on, you were talking about a bare procedural violation. We've opted into the process, therefore we're injured. Right. And let's also avoid category confusion. I'm going to go back to that framing that Congress's enactment of the NVRA private right of action makes the injury concrete. And the fact that people have opted in and expect engagement from the Secretary makes it particularized. I hope that answers your question, Your Honor. But two people could have a different view about what the Secretary needs to do. Yes? I would agree with that, but I don't think that matters in the context of an NVRA violation claim. The core, the merits of the claim, once it gets adjudicated after a remand, is to decide, prior effect, decides whether the list maintenance processes engaged in by the Secretary are quote-unquote reasonable. The question is who has the ability to bring that claim. And I think what you've zeroed in on is a claim that your clients have a particularized injury because they have engaged in this process. But anyone could engage in this process, right? Just like anyone can opt in to become a political candidate and they obtain special standing rights. Anyone can opt in to become an election monitor if they're appointed and they have special standing rights in the context of election law. So the fact that— But why is this any different? What if anyone sends, certainly we're allowed under the Constitution to petition our government about our grievances, right? Do you, does a person give themselves a concrete and particularized injury when they disagree with a government action if they have petitioned their representative and not received a response that they believe to be adequate? TransUnion certainly suggests that they do have that Article III standing. Whether they went on the merits is not totally their mission. In what way does TransUnion suggest that to you? Because TransUnion pointed to one type of historical analog that could qualify to elevate an otherwise procedural injury to concrete is a constitutional violation. So if there is, if there's something that's maybe not an identical twin, but something very parallel or analogous historically to a constitutional violation— I don't, I don't think we've said that anyone who perceives a constitutional violation has a particularized injury, have we? I don't, I can't think of a case that comes to mind with that framing, no, Your Honor. Right. But, so if Your Honors find no standing here, then what we've done is we've made a right of action created under federal law into a dead letter. It doesn't apply to anyone. The Secretary has absolute discretion ad infinitum into the future to— Describe, would you describe specifically what you mean when you say a right of action? It's Section 20510 of the NVRA, and that says anyone aggrieved by a violation of this act can, after a certain notice and cure period, can bring a federal action. Right, but traditionally, what has, does aggrieved by mean they feel upset about it? Well, in this case, they have a legal right, they have a right granted under the statute to have list maintenance made into a reasonable list maintenance process. The same right that everyone has, right? Well, they're not aggrieved under the statute until they've sent the notice, and then Congress says they can expect some treatment of the notice from the Secretary. So it's all intertwined. The right of action changes everything compared to cases like Wood. It elevates concreteness, it has something to add to the particularity, and if we have to find standing here, unless, and if we don't find standing here, then we are making that private right of action a dead letter. I know, I see I'm well into my rebuttal time. Well, you still have your rebuttal time, so I'll ask you to finish the sentence you're about to say, but don't start another topic, you can...  Just whether the court applies Jacobson or Wood, or finds the cases we cite, Griswold, Green, and King persuasive, also there's Wohl, the result is the same, the plaintiffs have standing. Thank you. You do have five minutes for rebuttal. Okay, thank you, Your Honors. Ms. Noonan. Thank you, Your Honors, and may it please the court, my name is Alexandra Noonan, and I represent Secretary Raffensperger. This appeal turns on one dispositive point, that plaintiffs have not alleged that they have suffered an injury in fact, and therefore, the district court correctly dismissed their amended complaint for lack of Article III standing. Having abandoned their claim of injury based on vote dilution, the only asserted injury for this appeal is their alleged undermined or lost confidence in Georgia's electoral process. That injury is not concrete, it is not particularized, and it is not imminent as required for standing under Spokio and Lujan. But plaintiff's argument sweeps even further than that. In their reply, plaintiffs argue that in creating a private right of action, Congress has essentially created a class of self-appointed private attorneys general who may enforce the MDRA as they see fit, whether they have been actually injured or not. And as plaintiffs claim in their reply, all they would need to do is send the statutorily required pre-litigation notice letter, wait the requisite period of time, and file suit. As to concreteness, plaintiff's alleged injury is a moving target. At various points, plaintiff's injury is framed as lost confidence due to the risk of vote dilution, their alleged interactions with the secretary, including the lack of a direct personalized response to their unsolicited letter, and now for the first time on reply, interference with their participation in the political process. But the framing makes no difference, the result is the same. This court and the Supreme Court have consistently held that purely psychic injuries arising from disagreement with government action do not qualify as concrete injuries. And that is what plaintiffs have alleged. How much should we be looking to our Wood case, which did not deal with the MDRA, right? It did not. That's a state law case, but it did deal with the extent to which plaintiffs have particularized injuries when they're alleging a sort of general grievance with the administration of Georgia's electoral law. And that was a vote dilution claim? It was a vote dilution case, but I do think... And here he seems to have, at least in his initial briefing, seemed to back away from the vote dilution claim. I think that's true, Your Honor. I don't find that a compelling read of the immediate complaint, but if we want to follow it along, I think that still presents the problem from the colloquy that counsel engaged in with Judge Grant, which is essentially he's saying, as long as we send... Because the letter that plaintiffs are describing is a prerequisite to filing suit under the MDRA. That's what it is. You have to give the government an opportunity to cure before you can sue. And that's not unique to the MDRA statutory scheme. So is there an obligation on the part of the Secretary to respond to the letter? There is not. And this point about absolute discretion, at various points it's described as self-appointed. The Secretary's discretion to establish his list of maintenance procedures is not self-appointed. It is appointed by the General Assembly, who wrote in OCGA 21.2.233 that he has discretion to determine his frequency for comparing our active voter rolls and NCOA, excuse me, National Change of Address information. But to get back to the answer to your question, Your Honor, counsel's essentially saying that because his clients have submitted this letter of what they believe to be an NVRA violation, they're entitled to a response back in the form of compliance with their request, and that makes it particularized. But as Judge Grant was pointing out, people are going to reasonably disagree about whether the Secretary's efforts are adequate or just in line with their preferences. And so essentially, it imports a merits analysis into the standing analysis by saying, well, we're going to look at how valid, I guess, that response or that complaint is in determining whether or not it affects the response. Because I don't, if you just, under that logic, anybody who sent a letter, no matter how wild the complaint, would have at a minimum a response, excuse me, an entitlement to a personalized response from the Secretary. And that just, that is not going, that is not particularized, but it is also not concrete. He's not right that when he says if we are to rule against him, we would be rendering the private right of action in the NVRA a dead letter. There are lawsuits that private individuals can bring. Of course. Okay. Yes. There are a number of different hypothetical plaintiffs who would actually suffer a concrete injury. The NVRA prohibits systematic removal 90 days from an election. So if you were a person who was removed in that period per a systematic removal, that would be obviously a concrete injury, that would be an NVRA plaintiff. It also has, the NVRA also has disclosure provisions. It has. What if, and this is just a hypothetical, I'm kind of curious about it. If I have purchased a home, I've owned my home for five years, and I realize that the prior owner is still registered to vote at my home, do I have a right, private right of action to challenge somebody else's voter registration? I think that would depend on if you could prove that you had been injured, but the facts are a little difficult for me. And I was just curious. Because when you go to register, it would likely prompt an investigation at the county level, so. Maybe if it stopped you from being registered in some way, which I don't know that that's feasible, but for the purposes of the hypo, if you try to register and they said, you know, someone is already here, then you would be able to say, this harms me personally. That's right. And if what you're looking for is kind of a hypothetical where you could ask for greater enforcement as an individual person, I do think due to the nature of the statute, that is going to be a harder hypothetical to come up with, because the portion of the statute that deals with the Secretary's, or in general, the state's highest election official, their obligation to remove individuals who shouldn't be there, that is framed as a requirement to have a general program that makes a reasonable effort to remove the unqualified. And it does have a safe harbor that very specifically lays out, if you do these things, you will per se be in compliance. But it's remarkably unspecific and leaves it to state law to define the contours of what that program is going to be. In contrast, the provisions about what a state cannot do in terms of removing people are much more specific, which is why it's easier to come up with hypos. But I could see a hypothetical where a person, let's engage, let's catastrophize, as the reply does at the very end, to say that the Secretary stops all list maintenance, all maintenance. I could see counties potentially having sanding, because they will maintain, or they will incur some kind of cost associated with the now bloated voter rolls. For example, counties have to send out precinct cards periodically, so if they have thousands of people who shouldn't be there, they're wasting their money sending out notices to people who, if there were a reasonable program, would have been removed years ago. I could see a person who leaves Georgia and somebody else, maybe they remain on the rolls due only to the fact that there's no list maintenance going on. And that person's identity is effectively stolen in Georgia if someone votes their ballot. I could potentially see that person having sanding, but only if they have a concrete injury. So maybe they change their voting behavior, and they don't vote because they have found out someone's already voted in their name. They don't want to get in trouble, so they change their voting behavior. It's likely to be a smaller class of potential plaintiffs than folks who are improperly removed. But I don't know that that's a bad thing. That's the nature of the statute. But we also do... It's a legislative judgment by Congress, right, to allow states to develop what they determine are reasonable procedures. So you need to have some procedures, but you can't, as you say, do nothing. But Congress judged that states could themselves develop reasonable procedures and could, through an amended statute, demand something different, right? That's right. That is correct. To get a little bit into TransUnion, as counsel says, intangible injuries can only be concrete if they have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Plaintiffs do not and cannot allege that their injured confidence, based solely on their disagreement with the Secretary's approach to list maintenance, bears any such relationship with a traditionally recognized harm. And the Supreme Court has already... We can get into the two examples that plaintiffs identify. Emotional distress torts are tossed around in the briefing. I do think that the reply stops short of actually saying that that's a good analog. And for obvious reasons, it is not. Plaintiffs haven't alleged anything like emotional distress. The citation to the Walters case is confusing to me. That is... That's cited for, in their opening brief, for the proposition that knowledge itself can be an injury, because in an attempt to divorce the lost confidence from the vote dilution, one of the alleged injuries counsels identified is that plaintiffs have this passion, this knowledge, they've discovered something. Walters did not say anything about knowledge itself being an injury. That was a case where they were assessing standing at summary judgment, where the burden for standing is higher than it is at the pleading stage. And the question was, is knowledge sufficient proof of your injury, and can it be admitted under Federal Rule of Evidence 602 as evidence of that injury without corroborating documentation? So that really has nothing to do with knowledge being an injury. But to return to the two possible analogs that plaintiffs proposed, Jacobson is a constitutional law case, and incidentally, it is one that the plaintiffs lost. Essentially in that case, the plaintiffs were a number of Democratic organizations and also voters who were trying to challenge a statute in Florida that provided that whoever won the last gubernatorial election, they would appear first. Their party candidates would appear first on the ballot. And the court said, well, none of the voters here have alleged any injury. And the only one that testified didn't testify that the order in any way impairs her right to vote or otherwise participate in the political process. The court did not say that so long as you allege some sort of participation, some sort of injury to your participation, that you have suffered an injury. And to that end, it's unclear to me what participation plaintiffs have even been denied. Now, this comes up for the very first time on REPLY, so this is our first opportunity to address it. It's not pled in the complaint. But plaintiffs are not statutorily entitled to a response to their NVRA notice letter. It is a letter that is intended to give the government opportunity to cure before they can sue. We see this in tort schemes. It's not unique. But plaintiffs— That itself does not create an injury, you're saying? It does not, because if it did, then all you would have to do is satisfy the statutory prerequisites, and now you have standing to bring the claim. That collapses the inquiries between injury in fact and legally cognizable injury. We have never disputed that they have a legally cognizable injury. We have not disputed that they gave the proper notice, and we have not disputed the existence of a private right of action. But what plaintiffs want to do is collapse these to avoid the issues with concreteness, and I believe it was Judge—I can't remember which—who brought it up, but essentially avoid the fact that this would be a bare procedural violation, divorce from any kind of actual harm. And then the second example, election monitors, I think is actually instructive of our point. So election monitors in Georgia, that's a statutory role. It's a defined role. I believe it's 21-208, and specifically subsection D gives election monitors the express entitlement to enter certain areas that would otherwise be barred to the general public. So tabulation, recount areas, these are places that election—what we call them poll monitors in Georgia, but where they would be permitted to go. Well, and in our Wood case, too, when we start talking about others who might have a cause of action, we were saying perhaps. Yes. Of course, it goes without saying that that was obviously a hypothetical in and of itself, and it's not—it doesn't have developed facts, nor is it really a holding. These are examples of things that plaintiffs— Or perhaps election monitors would have standing to sue if they were denied access to the recount, but that was not the holding. That was not the holding, no. But to the extent that plaintiffs want to argue that that would be a good analog, the harm there would be you are physically barred from entering an area that you otherwise had the right to access by virtue of your position as an election monitor. The part that's missing in that analogy there is plaintiffs don't have a statutory right to a response from the secretary, and they don't cite any provision of law that provides them that right. There's a sort of general claim that they have the right to participate. They did participate. They sent the notice, and there's a claim at one point in the reply that this is equivalent to federal election monitors. That's another statutorily created position, so it doesn't really have bearing on a case like this. But I think it would be hard even for an election monitor who didn't actually try to access an area, who found out later that it wouldn't have been available to them, I think even that would be hard for them to say that they have standing because they haven't actually suffered an injury, and plaintiffs haven't done so here. Let's see. As to particularity, this court has already held in wood that injuries based on an interest in compliance with election laws are generalized grievances. So regardless of whether that case involved vote dilution or not, it still controls as to that point. Plaintiffs pivoting to, it's really the lack of, well, we've already discussed that the lack of response to the letter, it cannot be an injury because they don't have an entitlement to a response. And finally, just to briefly, very briefly address the policy arguments at the end, plaintiffs argued in their reply that they're proposing a narrow construction of standing. Anybody who sends an MVRA violation and then doesn't receive a response would have standing. That is not a narrow class. That is potentially everyone, and it's immaterial whether a large number of people take the court up on that opportunity. The question is whether the injury is too common among all Americans. That would be the issue with particularity. So I see that I'm nearly out of time, so just to briefly conclude, we would ask that the court affirm the order of the district court dismissing this amended complaint for lack of jurisdiction. Thank you, Ms. Noonan. Mr. Greenspan, you have five minutes. Yes. Thank you, Judge. So one thing I didn't hear from my friend is a recitation of the facts of the actual notice. The facts of the notice included specific identification of tens of thousands of individuals who told the United States Postal Service that they had permanently moved away, yet were still maintained on the active voter rolls for the state of Georgia. This is the level of engagement, just like a political candidate goes out and collects signatures by doing a lot of work before opting in to become a participant in the political process. So the NVRA does allow the state to come up with its own processes. In OCGA 21-2-230, it doesn't permit challenges due to a change of address on the national database alone, right? Both true. And let me hit those. Section 233 is the statute cited by my friend, but what she omitted to inform this court is that that's challenged in count two of the complaint as inconsistent with federal law. It has the word discretion, and the discretion granted under that statute is permission under state law for the secretary to completely disregard, at his discretion or her discretion, all of the requirements under the NVRA. So that's actually part of the lawsuit. It's a little bit surprising to hear that being relied on as a justification for a dismissal. But the question is not whether there's been a violation. The question is whether your clients are injured by it, even if there was. And what I hear you saying is they are because they've looked into it a lot, and they are really upset about their conclusion, after looking into it a lot, that the secretary is not following the law, right? I would state it a little bit differently. You definitely would, but isn't that really the heart of it? It's a fair paraphrase, but there's a better paraphrase, which is that it's the secretary's actions have undermined the confidence in the electoral process of these plaintiffs. And again, another- But that means that anytime any election official in any state took an action that undermined the confidence in the electoral process of anyone who really cared about it, that person would have standing. Possibly, but that doesn't reach the whole electorate. It truly doesn't.  The generalized grievance case law is a concern that there's an injury that would be felt by the action of the griever by the entire electorate. That's never going to be the case. I don't think that's true. That would mean that anytime people could disagree reasonably or unreasonably on an issue, that everyone would have standing. I don't think I agree with that proposition. All I can do, Your Honor, is point you back to the cases that easily found Article III standing in the NVRA context on a theory of undermined confidence. Those are district court decisions. Right. A district court decision from, what, Colorado? There's Colorado, North Carolina, Indiana. And then there's the Wohl decision, which is outside the NVRA. I can't remember which jurisdiction that is. But it also, in an election law context, not NVRA, found that undermined confidence was a ground for the plaintiffs to have Article III standing. There are district court cases that say a lot of things, but you're going to have to persuade us that we should say it based on the merits. And what I haven't heard yet is a reason that, under your theory, anytime people didn't have the same response to something, that half of them, let's say that 50% of Americans think, or of Georgians, think the Secretary is doing a bang-up job with his duties under NVRA. 50% think that he's doing a terrible job. Right. So, under your theory, because not everyone agrees, the subset of people who don't agree have a concrete injury, right? Particularized. Particularized. Particularized. Right. Why wouldn't that also be true about Confederate monuments? Not everyone was upset that those monuments were taken down, but some people were. So, you would say that viewpoint is not shared by everyone, therefore, the people who have that viewpoint have a particularized injury. Yes. The Cenotaph removal cases are distinguishable because of lack of concreteness. I'm still not understanding what is more concrete about your injury than theirs. Ours is concrete because Congress, through its Spokio entitlement, elevated what would otherwise be a procedural or an intangible right into a concrete right. I'm not sure that the usual reading of Spokio in TransUnion is to say that Congress has expanded the rights of people to bring claims based only on a statutory violation. I think that's pretty much the opposite of whatever it perceives those cases to have  Well, I agree it stops short of that. Those cases explicitly say the mere fact of it, of a congressional right of action, doesn't solve anyone's Article III concrete injury problem. So that's why we go to the next step in TransUnion, which is we look for the historical analogs. And so what I've pointed to in this argument and in the briefing is the historical First Amendment right of petition, a constitutional violation that has an historical analog to what the Secretary did here. So under that, then anytime I write a letter to my member of Congress and receive a response that I deem insufficient or no response at all, I have the right to sue over that. That example confuses me because there's no private right of action in statutory law for a congressman not responding to a letter. So remember Article III standing layers on top of whether there's also a, let's call it statutory standing, which is not disputed here. No, but we're not talking about the private right of action. We're just talking about standing. Or let's say that there is a private right of action under the ADA, right, but you still have to have an injury. Right. And in our case, it's a violation of the NVRA that triggers the notice and the expectation Congress gives of a cure. On that point, let me agree with one thing that my friend said, which is there's no obligation of the Secretary to respond. I can concede that. The NVA language doesn't say there is, but there will be a consequence if the violations continue after the notice and after the time period expires. And that consequence, and especially if there's no response to the notice, the consequence is the undermined confidence and the deepening of the undermined confidence, which creates that Article III injury. So we're not arguing that there's a statutory obligation for the Secretary to respond, but it does change the character of the Article III analysis. And we have taken you over your rebuttal time. And Your Honor, I had something to say about Section 230, which is the voter against voter. I can either conclude my remarks or answer that question. We've taken you over.  Pardon? We've taken you over. So if you would conclude. All right. Thank you, Your Honors. With that, we would just ask that this court reverse. Thank you. Thank you both. We have your case under advisement, and court is adjourned.